IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OCTAVIO PASCUAL MONREAL, | ) | |
| ID # 35151-177, | ) | |
| Movant, | ) | No. 3:07-CV-2056-G (BH) |
| vs. | ) | No. 3:06-CR-0249-G (05) |
| | ) | ECF |
| UNITED STATES OF AMERICA, | ) | Referred to U.S. Magistrate Judge |
| Respondent. | ) | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, this case has been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

### I. BACKGROUND

**A. Nature of the Case**

Movant, an inmate currently incarcerated in the federal prison system, filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 to challenge his federal conviction and sentence in Cause No. 3:06-CR-0249-G. The respondent is the United States of America (government).

**B. Procedural History**

On August 9, 2006, movant was charged by indictment with conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 (Count 1), possession with intent to distribute a controlled substance in violation of § 841(a)(1) (Count 4), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Counts 5 and 6). (*See* Indict-

ment, doc. 27.)[1]  On September 5, 2006, defense counsel moved to dismiss Counts 5 and 6 and to suppress evidence.  (*See* docs. 40-41.)

On September 18, 2006, movant signed an agreement to plead guilty to the drug conspiracy (Count 1) and a factual resume in which he admitted that he knowingly and intentionally conspired with others to distribute over five kilograms of cocaine in July 2006.  (*See generally* Plea Agreement, doc. 45; Factual Resume, doc. 46.)  He admitted that he received payment to maintain security at a stash house for multiple-kilogram quantities of cocaine.  (Factual Resume at 2.)  He further admitted that he used numerous firearms available at the premises to further the cocaine distribution business by protecting the cocaine and drug proceeds.  (*Id.* at 2-3.)

On September 26, 2006, movant pled guilty to Count 1.  (*See* Tr. Rearraignment at 12.)  The Court inquired about the voluntariness and the factual basis for the plea.  (*Id.* at 2-12.)  On December 19, 2006, the Court conducted a sentencing hearing.  (Tr. Sentencing at 1.)  That same day, the Court entered judgment on movant's guilty plea and sentenced him to 235 months imprisonment.  (*See* Judgment, doc. 68).  Movant did not appeal.

On December 10, 2007, the Court received the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255.  (*See* Mot. Vacate at 1.)  He therein claims that his plea was involuntary due to ineffective assistance of counsel.  (*Id.* at 5.)  He also claims that his attorney rendered ineffective assistance at sentencing by failing to raise an argument under *United States v. Booker*, 543 U.S. 220 (2005).  (*Id.* at 21-27.)  The government contends that movant's claims have no merit.  (Resp. Opp'n Mot. § 2255 [hereafter Resp.].)  Movant has filed a reply brief.  (*See* Petr.'s Opp'n to Resp.

---

[1] Unless stated otherwise, all document numbers refer to the docket number assigned to the document in the underlying criminal action.

[hereinafter Reply].)

## II. VOLUNTARINESS OF GUILTY PLEA

Movant claims that he involuntarily pled guilty due to ineffective assistance of counsel. (Mot. Vacate at 5-20, 27-30.) More specifically, he contends that his attorney coerced him to plead guilty by telling him he would receive a life sentence if he went to trial. (*Id.* at 7, 9-10.)

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748).

Nevertheless, a plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there

3

needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant."[2] *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his or her plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749).

---

[2] Rule 11 has undergone various changes over the years. Fed. R. Civ. P. 11 (West 2007) (showing various amendments including amendments in 1999 and 2002); *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (referring to Rule 11 as the "guilty-plea safeguards"); *United States v. Vonn*, 535 U.S. 55, 62 (2002) (recognizing the evolution of the rule over the past three decades).

> When examining the totality of the circumstances, a reviewing court should "consider the complexity of the charge, the defendant's level of intelligence, age and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government."

*United States v. Cross*, 57 F.3d 588, 591 (7th Cir. 1995) (citations omitted). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

In addition, prisoners who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Prisoners must also overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

**A. Coercion**

Movant asserts that his attorney coerced him to plead guilty by stating that he would get life imprisonment if he went to trial. (Mot. Vacate at 7, 9-10.)

The plea agreement entered into by movant specifically states that it "is not the result of force or threats, or of promises apart from those set forth in this plea agreement." (Plea Agreement at 4.) At rearraignment, furthermore, the Court placed movant under oath and informed him of perjury consequences for falsely answering the Court's questions. (*See* Tr. Rearraignment at 2-3.) Movant stated that he spoke and understood English, and defense counsel confirmed that he had had no difficulty communicating with movant in English. (*Id.* at 3.) Movant further stated that he understood (1) what was happening at rearraignment; (2) the accusations within Count 1 to which he was pleading guilty; (3) the minimum and maximum terms of imprisonment (ten years to life) and maximum fine; (4) that the Court could impose a sentence above or below the appropriate guideline range; (5) that the guidelines were effectively advisory rather than mandatory in light of *Booker*; and (6) that he waived his right to appeal in the plea agreement except on specific grounds set out therein. (*Id.* at 3-4, 6, 8-9 .) He confirmed that no one had (1) attempted to force him to plead guilty, (2) made any promise outside the plea agreement to induce him to plead guilty, or (3) made any prediction or promise as to what his sentence would be other than stated in the plea agreement. (*Id.* at 10-11.) He also stated that he read and fully understood the plea agreement and factual resume, and that the plea agreement completely and accurately stated his agreement with the government. (*Id.*)

Movant's assertion of coercion by his attorney is clearly belied by the record. "Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty." *United*

*States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (quoting *United States v. Sanderson*, 595 F.2d 1021, 1021 (5th Cir. 1979) (per curiam)). Such refutations may be heard on collateral review, however, when the movant "offers specific factual allegations supported by the affidavit of a reliable third person". *Id.* In other words, when a § 2255 movant makes allegations which conflict with his sworn testimony at his plea hearing, he must provide an "independent indicia of the likely merit of [the] allegations, typically in the form of one or more affidavits from reliable third parties." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). A movant's own affidavit does not suffice. *United States v. Mackay*, Nos. 3:04-CV-0413-D, 3:97-CR-0208-T(01), 2007 WL 700895, at *26 (N.D. Tex. Mar. 6, 2007) (accepting recommendation of Mag. J.)

In this case, movant merely relies on his own affidavit proffered in support of his motion to vacate. The affidavit states in pertinent part:

> 8. . . . [My attorney, Mr. Pestinger] . . . told me, "Listen," It doesn't matter to a trial jury or Court, or the government if you were just there as a housekeeper or not. The fact is you were there. And they're going to believe that those were your drugs and guns and money. You'll lose trial and receive a Life sentence. . . .
>
> . . .
>
> 10. Mr. Pestinger also told me that once I got to the plea hearing, to just answer all the Courts [sic] questions with a yes sir, your Honor, Etc. I complied with these instructions as well. After sentencing, I never saw, or heard from Mr. Pestinger again.
>
> 11. Although I was thinking about appealing my case. I didn't know what I could Appeal. I was given two blank pieces of paper to sign by Mr. Pestinger, and was told that, that was my plea agreement. He never discussed the plea agreement with me, and just rushed through the P.S.I. report with me. . . .

(Aff. at 4.) Not only is this affidavit insufficient of itself to overcome the veracity of movant's prior testimony and the presumption of regularity accorded the court documents that he signed, the affi-

davit appears inconsistent with specific statements in his motion to vacate and reply brief. (*Compare* Mot Vacate at 7 (stating that he signed blank plea documents) *with* Reply at 4, 8 (identifying the alleged blank documents as pages 8 and 40 of respondent's appendix, not the plea agreement or factual resume)[3].) Additionally, with respect to ¶ 8, both the plea agreement and the Court informed movant that a life sentence merely represented the maximum sentence he faced from a sentencing range of ten years to life imprisonment.[4] This information contradicts any statement that movant would definitively receive a life sentence if he was found guilty at trial; it should have prompted some action by movant if his attorney had misinformed him about a life sentence. Considering movant's conduct as a whole, the Court finds no statement or action by movant at rearraignment or sentencing to support the statements in his affidavit.

Because movant has not overcome the presumption accorded his in-court declarations or the presumption of regularity accorded court records, the Court finds that counsel did not coerce movant to plead guilty.

---

[3] Page 8 of the appendix is a handwritten document signed by movant on September 7, 2006, which states in its entirety: "I direct my attorney to prepare my case for negotiation and not prepare for trial." Page 40 is an undated, handwritten document signed by movant, which states in its entirety: "No Appeal."

[4] The plea agreement sets forth the range of punishment at ten years to life imprisonment, and specifically states in ¶¶ 4 and 5:

> 4. **Court's sentencing discretion and role of the Guidelines**: Monreal understands that the sentence in this case will be imposed by the Court after consideration of the United States Sentencing Guidelines. The guidelines are not binding on the Court, but are advisory only. Monreal has reviewed the guidelines with his attorney, but understands no one can predict with certainty the outcome of the Court's consideration of the guidelines in this case. . . . Monreal fully understands that the actual sentence imposed (so long as it is within the statutory maximum) is solely in the discretion of the Court.
>
> 5. **Court's discretion**: Monreal understands that this plea agreement does not create a right to be sentenced within, or below, any particular guideline range, and fully understands that determination of the guidelines range, as well as the actual sentence imposed are solely in the discretion of the Court.

(Plea Agreement at 2-3.) Just before movant's signature, the agreement states that movant carefully reviewed every part of the agreement, and fully understood it. (*Id.* at 7.)

## B. Ineffective Assistance of Counsel

Movant also claims that alleged failures of his attorney to consult, investigate, and argue relevant points renders his plea involuntary. (Mot. Vacate at 5; Reply at 2.)

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario, a [prisoner] must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000). To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58. To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

In this instance, movant claims that his attorney rendered ineffective assistance when he failed to (1) consult with him about the charged offenses; (2) investigate the allegations against him and familiarize himself with the relevant facts and law; (3) present a Fourth Amendment challenge; and (4) argue *Booker* factors at sentencing. (Mot. Vacate at 5; Reply at 2.)

### 1. *Failures to Consult and Investigate*

Assuming without deciding that counsel's representation was deficient with respect to the level of consultation and investigation, Claims 1 and 2 entitle movant to no relief. He has shown no reasonable probability that but for the alleged deficiencies he would have insisted on pleading not guilty and proceeding to trial.

Although movant maintains that he is actually innocent of the charges against him and believes that he would have succeeded at trial (Mot. Vacate at 7, 9-11), the known evidence against him is not insubstantial: (1) he was arrested at the premises of a drug transaction with a significant sum of cash on his person, (2) numerous firearms and massive amounts of cocaine were discovered there, and (3) he lived at the premises and was paid more than $2,000 per month by alleged co-conspirators.[5] While movant asserts that he was paid to clean the house and cook instead of keeping it secure as admitted in the factual resume, he also concedes that he was "a hired hand to watch the house". (*See* Mot. Vacate at 10, 25.) Under the facts of this case, it is highly improbable that a jury would believe that the substantial monthly payments were for housecleaning and cooking alone. Furthermore, because this is a multi-defendant case in which each defendant has pled guilty, the possibility exists that a co-defendant may have elected to testify against movant.

Movant, moreover, reaped substantial benefits by pleading guilty. Had he been convicted at trial, he would have lost the three point reduction for acceptance of responsibility; thus increasing his sentencing exposure under the guidelines from a 235-month minimum to a 324-month minimum. He would also have faced a gun charge that would have added a mandatory, five-year consecutive sentence to whatever sentence received with respect to the other charges against him. Consequently, his plea reduced his sentencing exposure under the guidelines by at least 149 months. In light of this substantial decrease to the minimum sentence he would face, he has shown no reasonable probability that he would have insisted on going to trial with the known evidence against him.

Because movant has not shown any prejudice from the deficiencies alleged in Claims 1 and

---

[5] In his reply brief, movant also stated that he also received free room and board for his services. (Reply at 23.)

2, the claims necessarily fail.

### 2. *Fourth Amendment Challenge*

In his third claim, movant alleges that his attorney rendered ineffective assistance when he failed to present a Fourth Amendment challenge.[6] (Mot. Vacate at 13-20.) Counsel, however, filed a motion to suppress evidence under the Fourth Amendment prior to movant's plea. (*See* Doc. 41.) The Court finds no deficiency of counsel. The claim also fails for lack of prejudice. Under the facts of this case, movant has stated no valid basis for suppressing any of the evidence that would have been used against him. He has shown no reasonable probability that but for this alleged deficiency of counsel, he would have insisted on proceeding to trial. In the absence of a deficiency of counsel and resulting prejudice, this ineffective assistance claim fails.[7]

### 3. *Booker Arguments*

In his fourth claim, movant alleges that his attorney rendered ineffective assistance when he failed to argue *Booker* factors at sentencing. (Mot. Vacate at 5.) Although movant initially raises this claim as a basis for finding his plea invalid,[8] the claim has no impact on the validity of the plea because the alleged failure of counsel occurred well after entry of his plea. There is no reasonable probability on the facts of this case that movant would have insisted on pleading not guilty and

---

[6] Although movant disagrees with this characterization of his claim (*see* Reply at 10), his motion to vacate clearly characterizes his claim in the same manner, (see Mot. Vacate at 13 (titling the section as a failure to present a Fourth Amendment challenge) and 20 (arguing that his attorney's "failure to competently raise these Issues during the preliminary stages caused" an involuntary plea). The Court will consider movant's alternate theory under the Fourth Amendment in the next footnote.

[7] In his reply brief, movant alters this claim to one that his attorney "abandoned a winning Fourth Amendment issue." (*See* Reply at 9-10.) Such claims fails for a lack of prejudice for the same reasons stated in the body of these findings. Notably, each of movant's four co-defendants pled guilty without moving to suppress any evidence.

[8] Movant also raises the claim in the context of ineffective assistance of counsel at sentencing. (Mot. Vacate at 21-27.) The Court will address the claim in that context in the next section.

12

proceeding to trial based upon this alleged deficiency of counsel which purportedly occurred at sentencing. The claim provides no basis to invalidate movant's plea.

In conclusion, movant has not shown that he involuntarily pled guilty due to coercion or ineffective assistance of counsel. Under the totality of circumstances, it appears that movant voluntarily entered his plea of guilty. Accordingly, the Court should find that movant voluntarily pled guilty to Count 1, and that his claims related to the voluntariness of his plea entitle him to no relief in this § 2255 action.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING

Movant also asserts that his attorney rendered ineffective assistance at sentencing when he failed to argue the *Booker* factors. (Mot. Vacate at 21-27.) However, the facts of this case simply provide no support for the claim. In counsel's sentencing memorandum dated December 12, 2006, (*see* App. at 36-37), counsel argued the *Booker* factors at sentencing. Counsel also orally argued for a sentence below the calculated guidelines range, and for the Court to look beyond the Presentence Report. (Sentencing Tr. at 4-5.) The Court thus finds no deficiency of counsel.

Movant has also shown no prejudice from the alleged deficiency of counsel. To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). Movant has not carried that burden. At sentencing, the Court recognized that *Booker* had made the guidelines advisory, and applied a sentencing procedure in accordance with *Booker*. (Sentencing Tr. at 7-13.) In light of the *Booker* factors, the Court imposed a sentence at the bottom of the calculated guidelines range. (*Id.* at 12-

13.) Consequently, there is no reasonable probability that the Court would have imposed a less harsh sentence but for the alleged deficiency of counsel.

For these reasons, the alleged ineffective assistance at sentencing entitles movant to no relief in this § 2255 action.

## IV. EVIDENTIARY HEARING

Section 2255 of Title 28 of the United States Code controls whether an evidentiary hearing is required in this case. The statute provides that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b). A defendant bringing a claim under § 2255 that conflicts with his sworn testimony must provide "specific factual allegations" regarding the alleged violation of his constitutional rights, and these allegations must be corroborated before a hearing will be required. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Furthermore, when the movant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in light of other evidence in the record," the Court may dispense with his allegations without an evidentiary hearing. *Id.* Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary. Because movant has provided no independent support for the averments in his affidavit, he is not entitled to a hearing. The matters reviewed by the Court conclusively show that movant is entitled to no relief.

## V. RECOMMENDATION

For the foregoing reasons, the Court should **DENY** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 with prejudice.

SIGNED this 10th day of December, 2008.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE